Andrew G. Gunem (SBN 354042)
andrewg@straussborrelli.com
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Ste. 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorney for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| **ADNAN ANSAR**, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>**THE GILL CORPORATION**,<br><br>          Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** **FOR DAMAGES, INJUNCTIVE RELIEF, AND EQUITABLE RELIEF FOR:**<br>1. **NEGLIGENCE;**<br>2. **NEGLIGENCE PER SE;**<br>3. **BREACH OF IMPLIED CONTRACT;**<br>4. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>5. **UNJUST ENRICHMENT;**<br>6. **CALIFORNIA UNFAIR COMPETITION LAW;**<br>7. **CALIFORNIA CONSUMER PRIVACY ACT;**<br>8. **DECLARATORY JUDGMENT.**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT - 1

1    Adnan Ansar ("Plaintiff"), through his attorneys, individually and on behalf

2  of all others similarly situated, brings this Class Action Complaint against

3  Defendant The Gill Corporation ("TCG" or "Defendant"), and its present, former,

4  or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or

5  other related entities. Plaintiff alleges the following on information and belief—

6  except as to his own actions, counsel's investigations, and facts of public record.

**NATURE OF ACTION**

7

8    1.    This class action arises from Defendant's failure to protect highly

9  sensitive data.

10    2.    Defendant manufacturers and sells composite products with a focus on

11  the aerospace and transportation industries.[1] Defendant's clients include Boeing,

12  Emirates, FedEx, SpaceX, Northrop Grumman, and Lockheed Martin.[2] And

13  Defendant currently has over eight-hundred employes.[3]

14    3.    As such, Defendant stores a litany of highly sensitive personal

15  identifiable information ("PII") about its current and former employees. But

16  Defendant lost control over that data when cybercriminals infiltrated its

17  insufficiently protected computer systems in a data breach (the "Data Breach").

18    4.    It is unknown for precisely how long the cybercriminals had access to

19  Defendant's network before the breach was discovered. In other words, Defendant

20  had no effective means to prevent, detect, stop, or mitigate breaches of its systems—

21

22  [1] *Home Page*, THE GILL CORP., https://www.thegillcorp.com/ (last visited Oct. 10, 2024).
    [2] *Id*.
23  [3] *Id*.

24

CLASS ACTION COMPLAINT - 2

thereby allowing cybercriminals unrestricted access to its current and former employees' PII.

5.      On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. In short, Defendant's failures placed the Class's PII in a vulnerable position—rendering them easy targets for cybercriminals.

6.      Plaintiff is a Data Breach victim, having received a breach notice. He brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

7.      The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former employees' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

**PARTIES**

8.      Plaintiff, Adnan Ansar, is a natural person and citizen of California where he intends to remain.

9.      Defendant, The Gill Corporation, is a stock corporation incorporated in California and with its principal place of business at 4056 Easy Street, El Monte, California 91731.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy

CLASS ACTION COMPLAINT - 3

exceeds $5 million, exclusive of interest and costs. Members of the proposed Class are citizens of different states than Defendant. And there are over 100 putative Class Members.

11.    This Court has personal jurisdiction over Defendant because it is headquartered in California, regularly conducts business in California, and has sufficient minimum contacts in California.

12.    Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### *Defendant Collected and Stored the PII of Plaintiff and the Class*

13.    Defendant manufacturers and sells composite products with a focus on the aerospace and transportation industries.[4] Defendant's clients include Boeing, Emirates, FedEx, SpaceX, Northrop Grumman, and Lockheed Martin.[5] And Defendant currently has over eight-hundred employes.[6]

14.    As part of its business, Defendant receives and maintains the PII of thousands of its current and former employees.

15.    In collecting and maintaining the PII, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal

---

[4] *Home Page*, THE GILL CORP., https://www.thegillcorp.com/ (last visited Oct. 10, 2024).
[5] *Id*.
[6] *Id*.

CLASS ACTION COMPLAINT - 4

law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

16.     Under state and federal law, businesses like Defendant have duties to protect its current and former employees' PII and to notify them about breaches.

17.     Defendant recognizes these duties, declaring in its "Privacy Policy" that:

a.     "The Gill Corporation ('Gill Corp.,' 'we,' 'us,' or 'our') is committed to protecting your privacy."[7]

b.     "Gill Corp. has implemented administrative, technical, and physical security controls that are designed to safeguard Personal Information."[8]

c.     "[W]e cannot disclose specific pieces of Personal Information if the disclosure would create a substantial, articulable, and unreasonable risk to the security of the Personal Information[.]"[9]

d.     "We care about keeping you secure and safe . . .. Keeping you safe requires us to process your Personal Information . . . to combat spam, malware, malicious activity or security risks; improve and enforce our security measures; and to monitor and

---

[7] *Privacy Policy*, THE GILL CORP., https://www.thegillcorp.com/privacy-policy/ (last visited Oct. 10, 2024).
[8] *Id*.
[9] *Id*.

verify your identity so that unauthorized users do not gain access to your information."[10]

18.    Indeed, in a 2018 advertisement called "Cyber Sentinels," Defendant declared the following:

    a.    "At The Gill Corporation, we deploy a pre-emptive approach to the digital threat and have crafted a plan to protect our internal resources and customers alike."[11]

    b.    "At the core of our plan is a team of in-house tech experts who work tirelessly to protect our digital infrastructure and keep our electronic devices humming when something goes wrong."[12]

    c.    "[T]he IT department is also responsible for protecting the corporate networks, systems and financial records from cyber-attacks."[13]

    d.    "The IT staff routinely conducts trainings, circulates warnings and interacts closely with the workforce to make sure everyone knows what's out there."[14]

    e.    "Our Chairman and CEO, Stephen Gill, the shareholders, and everyone from the top on down is committed to maintain our privacy, do whatever it takes to protect both ourselves and our

---

[10] *Id.*

[11] *Cyber Sentinels*, THE GILL CORP. (Fall 2018) https://www.thegillcorp.com/app/uploads/2023/03/2018-Fall.pdf.

[12] *Id.*

[13] *Id.*

[14] *Id.*

customers data and to keep those monsters in cyber-space at bay."[15]

***Defendant's Data Breach***

19.   On or around June 23, 2024, Defendant was hacked in the Data Breach.[16]

20.   Worryingly, Defendant has already admitted the following:

a.   "During the Cyber-Attack an unauthorized third party compromised TGC's systems by encrypting many TGC files and backup systems."[17]

b.   "[W]e have reason to believe that some personal information we obtained from you in the course of your employment with TGC ***was accessed and taken*** during the Cyber-Attack."[18]

c.   "[W]e have determined that the personal information pertaining to you that may have been involved in this incident may have included your name and Social Security Number and a limited number of driver's license numbers and/or bank account numbers."[19]

---

[15] *Id.*

[16] *Data Breach Notifications*, MAINE ATTY GEN, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/c1fc27fa-c437-4425-9154-01c6e8a04e71.html (last visited Oct. 10, 2024).

[17] *Id.*

[18] *Id.* (emphasis added).

[19] *Id.*

d.      "Your form W-2 for past years **was *likely*** to have been exposed."[20]

21.    Additionally, Defendant admitted that the Data Breach was caused by a "vulnerability that was exploited by the third party[.]"[21]

22.    Because of Defendant's Data Breach, at least the following types of PII were compromised:

a.      names;

b.      Social Security numbers;

c.      driver's license numbers;

d.      bank account numbers; and

e.      W-2 forms.[22]

23.    In total, Defendant injured at least 3,232 persons—via the exposure of their PII—in the Data Breach.[23] Upon information and belief, these 3,232 persons include its current and former employees.

24.    And yet, Defendant waited over until September 16, 2024, before it began notifying the class—a full 85 days after the Data Breach was discovered.[24]

25.    Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

---

[20] *Id.* (emphasis added).
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*

CLASS ACTION COMPLAINT - 8

26.     And when Defendant did notify Plaintiff and the Class of the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and the Class:

      a.    "Since your W-2 form was likely exposed, you should complete the attached IRS form 14039. Fax it to the IRS along with the identification required by the form. The fax number is (855) 807-5720."[25]

      b.    "You should remain vigilant for incidents of fraud and identity theft including by regularly reviewing your account statements and monitoring free credit reports."[26]

      c.    "[C]ontact the Federal Trade Commission ('FTC') or law enforcement to report incidents of identity theft or to learn about steps you can take to protect yourself from identity theft."[27]

      d.    "[O]btain additional information from the FTC and the credit reporting agencies about fraud alerts and security freezes."[28]

27.     Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII. And thus, Defendant caused widespread injury and monetary damages.

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*

28.   Since the breach, Defendant claims to have "deployed additional protective measures to secure TGC's systems and are examining additional ones we can take[.]"[29]

29.   But such simple declarations are insufficient to ensure that Plaintiff's and Class Members' PII will be protected from additional exposure in a subsequent data breach.

30.   Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class Members for the injuries that Defendant inflicted upon them.

31.   Because of Defendant's Data Breach, the sensitive PII of Plaintiff and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

**Hunters International & the Dark Web**

32.   Worryingly, the cybercriminals that obtained Plaintiff's and Class Members' PII appear to be the notorious cybercriminal group "Hunters International" (a.k.a. "Hunters").[30]

---

[29] *Id.*

[30] *See, e.g.*, *Ransomware Attack Exposes 250GB of Data at The Gill Corporation*, HALCYON (July 29, 2024) https://ransomwareattacks.halcyon.ai/attacks/ransomware-attack-exposes-250gb-of-data-at-the-gill-corporation; *The Gill*, BREACHSENSE (July 30, 2024) https://www.breachsense.com/breaches/the-gill-data-breach/; *Hack Tuesday Week 24-40 July 2024*, HACKMANAC, https://hackmanac.com/news/hack-tuesday-week-24-30-july-2024 (last visited Oct. 10, 2024).

33.    Hunters is an especially notorious cybercriminal group—with its "home base" thought to be in Eastern Europe and Russia.[31] Cybersecurity experts report the following:

      a.    "One of Hunters International's unique characteristics is that data exfiltration is its top priority. . . . Hunters understands that data is money. You'll either pay to protect it, or they'll have a product to monetize."[32]

      b.    "The group appears driven by profit, focusing on those lacking robust cybersecurity defenses[.]"[33]

      c.    "The data leak site also features a News page, with the most recent post dated April 24, 2024, including a link to a public domain site. This public site mirrors the data leak site but is accessible from any standard web browser. The domain is registered in Russia under a false identity[.]"[34]

34.    Notably, Hunters maintains both (1) a leak site on the Dark Web, and (2) a leak site on the traditional, public internet.[35] This is significant because it

---

[31] Christine Barry, *Hunters International: Your data is the prey*, BARRACUDA (July 29, 2024) https://blog.barracuda.com/2024/07/29/hunters-international--your-data-is-the-prey.

[32] *Id.*

[33] Adi Bleih, *On The Hunt for Hunters Ransomware: Origins, Victimology and TTPs*, CYBERINT (Aug. 20, 2024) https://cyberint.com/blog/research/hunters-ransomware/.

[34] *Id.*

[35] *Dark Web Profile: Hunters International*, SOC RADAR (Feb. 20, 2024) https://socradar.io/dark-web-profile-hunters-international/.

makes it far easier for Plaintiff's and Class Members' PII to be exposed and disseminated to other cybercriminals.[36]

35.    Here, numerous third-party reports reveal that Hunters successfully exfiltrated 250.9 gigabytes of data—and promised that "it will be published within the next 2-3 days."[37]

36.    An initial screenshot of Hunters' leak site shows a countdown timer (seemingly until the data is leaked).[38] Notably, this screenshot was apparently taken 2 days, 8 hours, and 37 minutes before the publishing of the exfiltrated data.[39] Moreover, the screenshot shows that, at that time, "0/6" disclosures were made by Hunters.[40]

| The Gill Corporation | ⏱ 2d 08h 37m 📌 |
| --- | --- |
| 🇺🇸 United States of America | |
| 🔒 🗄 🔲 👁 🔑 🪪 💲 👥 | |
| **Revenue** **Employees** | **Disclosures** |
| $272M        809 | 0/6 |

---

[36] *See id.*
[37] *The Gill*, BREACHSENSE (July 30, 2024)
https://www.breachsense.com/breaches/the-gill-data-breach/; FalconFeeds.io
(@FalconFeedsio), X (July 29, 2024, 10:12 AM)
https://x.com/FalconFeedsio/status/1817941262848135415.
[38] FalconFeeds.io (@FalconFeedsio), X (July 29, 2024, 10:12 AM)
https://x.com/FalconFeedsio/status/1817941262848135415.
[39] *Id.*
[40] *Id.*

37.     However, later screenshots reveal that Hunters ***actually leaked*** the stolen PII near the end of July 2024 (the screenshots below have been redacted to protect the privacy of those exposed).[41]





38.     First, this updated screenshot shows that "6/6" disclosures were thereafter made by Hunters.[42] And to make matters worse, the updated screenshot shows the following:

---

[41] *Hunters*, RANSOMLOOK, (Aug. 13, 2024)
https://www.ransomlook.io/group/hunters.
[42] *Id.*

CLASS ACTION COMPLAINT - 13

a.      On July 31, 2024, Hunters *published* 7.5 gigabytes including 6,451 files that were marked "HR Confidential."[43]

b.      Now, the files can seeming be downloaded by clicking on a red "view" link.[44]

c.      Thus far, the files were *already viewed* 130 times.[45]

39.      Simply put, it appears that the PII of Plaintiff and Class Members (1) was already published by Hunters on the Dark Web, and (2) is now being actively disseminated to other cybercriminals.

**Plaintiff's Experiences and Injuries**

40.      Plaintiff Adnan Ansar is a former employee of Defendant.

41.      Thus, Defendant obtained and maintained Plaintiff's PII.

42.      As a result, Plaintiff was injured by Defendant's Data Breach.

43.      As a condition of his employment with Defendant, Plaintiff provided Defendant with his PII. Defendant used that PII to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that PII in order to obtain employment and payment for that employment.

44.      Plaintiff provided his PII to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain

---

[43] *Id.*
[44] *Id.*
[45] *Id.*

Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

45.    Plaintiff reasonably understood that a portion of the funds derived from his employment would be used to pay for adequate cybersecurity and protection of PII.

46.    Plaintiff received a Notice of Data Breach.

47.    Thus, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

48.    Through its Data Breach, Defendant compromised Plaintiff's PII.

49.    Plaintiff has already suffered from the misuse of his PII. Specifically, Plaintiff received the following warnings that his PII was ***already leaked*** on the Dark Web:

        a.    On June 29, 2024, Plaintiff received a notification on his Google account warning him that "Your personal info was found on the dark web."

        b.    On October 10, 2024, Plaintiff received a notification from his credit card company ("Discover Card") titled "New Social Security number alert" which stated that "We found your SSN on a Dark Web site."

50.    Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft. After all, Defendant directed Plaintiff to take those steps in its breach notice.

51.    And in the aftermath of the Data Breach, Plaintiff suffered from a spike in scam phone calls, text messages, and emails. Now, Plaintiff is flooded by at least 5-10 scam phone calls per day.

52.    Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

53.    Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

54.    Plaintiff suffered actual injury from the exposure and theft of his PII—which violates his rights to privacy.

55.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

56.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII right in the hands of criminals.

57.    Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

58.    Today, Plaintiff has a continuing interest in ensuring that his PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

*Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft*

59.    Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

        a.    loss of the opportunity to control how their PII is used;

        b.    diminution in value of their PII;

        c.    compromise and continuing publication of their PII;

        d.    out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

        e.    lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

        f.    delay in receipt of tax refund monies;

        g.    unauthorized use of their stolen PII; and

        h.    continued risk to their PII—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII.

60.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service,

stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

61. The value of Plaintiff and Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

62. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

63. One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—first the stolen PII, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

64. The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

65. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a

CLASS ACTION COMPLAINT - 18

jury, to find that Plaintiff and other Class Members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

66.    Defendant disclosed the PII of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

67.    Defendant's failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

**Defendant Knew—Or Should Have Known—of the Risk of a Data Breach**

68.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

69.    In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[46]

70.    Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware

---

[46] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.

criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[47]

71.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

72.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

73.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[48]  The FTC declared that, *inter alia*, businesses must:

      a.    protect the personal customer information that they keep;

      b.    properly dispose of personal information that is no longer needed;

      c.    encrypt information stored on computer networks;

      d.    understand their network's vulnerabilities; and

---

[47] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[48] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

CLASS ACTION COMPLAINT - 20

e.     implement policies to correct security problems.

74.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

75.    Furthermore, the FTC explains that companies must:

a.     not maintain information longer than is needed to authorize a transaction;

b.     limit access to sensitive data;

c.     require complex passwords to be used on networks;

d.     use industry-tested methods for security;

e.     monitor for suspicious activity on the network; and

f.     verify that third-party service providers use reasonable security measures.

76.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure— to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

77.    In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former

employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**Defendant Failed to Follow Industry Standards**

78. Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

79. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

80. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR-DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

CLASS ACTION COMPLAINT - 22

81.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

82.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach discovered by The Gill Corporation in June 2024, including all those individuals who received notice of the breach.

83.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

84.     Plaintiff reserves the right to amend the class definition.

85.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

86.    <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

87.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 3,232 members.

88.    <u>Typicality</u>. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

89.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

90.    <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a.    if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b.   if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.   if Defendant were negligent in maintaining, protecting, and securing PII;

d.   if Defendant breached contract promises to safeguard Plaintiff and the Class's PII;

e.   if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.   if Defendant's Breach Notice was reasonable;

g.   if the Data Breach caused Plaintiff and the Class injuries;

h.   what the proper damages measure is; and

i.   if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

91.   <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By

contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
### Negligence
**(On Behalf of Plaintiff and the Class)**

92.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

93.     Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

94.     Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

95.     Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

96.     Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class Members' PII.

97.    Defendant owed—to Plaintiff and Class Members—at least the following duties to:

      a.    exercise reasonable care in handling and using the PII in its care and custody;

      b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

      c.    promptly detect attempts at unauthorized access;

      d.    notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII.

98.    Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

99.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

100.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

101.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

102.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII —whether by malware or otherwise.

103.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

104.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

105.    Defendant breached these duties as evidenced by the Data Breach.

106.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by:

      a.    disclosing and providing access to this information to third parties and

      b.    failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

CLASS ACTION COMPLAINT - 28

107.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

108.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

109.    Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

110.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

111.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

112.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost

benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

113.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

114.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

115.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive PII.

116.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

117.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was

particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

118.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

119.    But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

120.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

121.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

122.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## THIRD CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

123.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

124.    Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving employment provided by Defendant. Plaintiff and Class Members provided their PII to Defendant or its third-party agents in exchange for Defendant's employment.

125.    Plaintiff and Class Members reasonably understood that a portion of the funds derived from their labor would be used to pay for adequate cybersecurity measures.

126.    Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

127.    Plaintiff and the Class Members accepted Defendant's offers by disclosing their PII to Defendant or its third-party agents in exchange for employment.

128.    In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

129.    In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's PII.

130.   Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

131.   After all, Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

132.   Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

133.   Defendant materially breached the contracts it entered with Plaintiff and Class Members by:

    a.    failing to safeguard their information;

    b.    failing to notify them promptly of the intrusion into its computer systems that compromised such information.

    c.    failing to comply with industry standards;

    d.    failing to comply with the legal obligations necessarily incorporated into the agreements; and

    e.    failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

134.   In these and other ways, Defendant violated its duty of good faith and fair dealing.

135.   Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

CLASS ACTION COMPLAINT - 33

136.     And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

137.     Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

## FOURTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

138.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

139.     Under California law, every contract imposes on each party a duty of good faith and fair dealing in each performance and its enforcement. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

140.     Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

141.     Here, Plaintiff and Defendant entered into a contract (implied in law, fact, or otherwise) whereby Defendant agreed to:

    a.     use a portion of the funds derived from Plaintiff's and Class Members' labor to pay for adequate cybersecurity measures;

CLASS ACTION COMPLAINT - 34

b.      use adequate cybersecurity measures as required by state law, federal law, and Defendant's contractual agreements (implied or otherwise); and

c.      notify them promptly of any exposure of their PII.

142.    As current and former employees, Plaintiff and Class Members fully fulfilled their contractual obligations when they provided their labor to Defendant.

143.    Furthermore, the conditions precedent (if any) to Defendant's performance have already occurred.

144.    Defendant unfairly interfered with the Plaintiff's and Class Members' rights to receive the benefits of the contract—and breached the covenant of good faith and fair dealing—by, *inter alia*:

a.      failing to safeguard their information;

b.      failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c.      failing to comply with industry standards;

d.      failing to comply with its legal obligations; and

e.      failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

145.    Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

CLASS ACTION COMPLAINT - 35

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

146. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

147. This claim is pleaded in the alternative to the breach of implied contract claim.

148. Plaintiff and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted from (1) using their PII to facilitate employment, and (2) using their labor to derive profit.

149. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

150. Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

151. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

152. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on

the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

153.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' (1) PII and (2) employment because Defendant failed to adequately protect their PII.

154.    Plaintiff and Class Members have no adequate remedy at law.

155.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

**SIXTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (UCL)**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

156.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

157.    Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

158.    Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA") and other state data security laws.

159.    Defendant stored the PII of Plaintiff and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable

1    regulations and that would have kept Plaintiff's and the Class's PII secure to prevent

2    the loss or misuse of that PII.

3        160.    Defendant failed to disclose to Plaintiff and the Class that their PII was

4    not secure. However, Plaintiff and the Class were entitled to assume, and did

5    assume, that Defendant had secured their PII. At no time were Plaintiff and the

6    Class on notice that their PII was not secure, which Defendant had a duty to

7    disclose.

8        161.    Defendant also violated California Civil Code § 1798.150 by failing to

9    implement and maintain reasonable security procedures and practices, resulting in

10   an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the

11   Class's nonencrypted and nonredacted PII.

12       162.    Had Defendant complied with these requirements, Plaintiff and the

13   Class would not have suffered the damages related to the data breach.

14       163.    Defendant's conduct was unlawful, in that it violated the CCPA.

15       164.    Defendant's acts, omissions, and misrepresentations as alleged herein

16   were unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade

17   Commission Act.

18       165.    Defendant's conduct was also unfair, in that it violated a clear

19   legislative policy in favor of protecting consumers from data breaches.

20       166.    Defendant's conduct is an unfair business practice under the UCL

21   because it was immoral, unethical, oppressive, and unscrupulous and caused

22   substantial harm. This conduct includes employing unreasonable and inadequate

23   data security despite its business model of actively collecting PII.

24

                    CLASS ACTION COMPLAINT - 38

167. Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

168. Instead, Defendant made the PII of Plaintiff and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

169. As a result of those unlawful and unfair business practices, Plaintiff and the Class suffered an injury-in-fact and have lost money or property.

170. For one, on information and belief, Plaintiff's and the Class's stolen PII has already been published—or will be published imminently—by cybercriminals on the dark web.

CLASS ACTION COMPLAINT - 39

171.   The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

172.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

173.   Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## SEVENTH CAUSE OF ACTION
**Violations of the California Consumer Privacy Act ("CCPA")**
**Cal. Civ. Code § 1798.150**
**(On Behalf of Plaintiff and the Class)**

174.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

175.   Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII of Plaintiff and the Class. As a direct and proximate result, Plaintiff's and the Class's nonencrypted and nonredacted PII was subject to unauthorized access and exfiltration, theft, or disclosure.

176.   Defendant is a "business" under the meaning of Civil Code § 1798.140 because Defendant is a "corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other

CLASS ACTION COMPLAINT - 40

owners" that "collects consumers' personal information" and is active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 1798.140(d).

177.   Plaintiff and Class Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold PII, including Plaintiff's and Class Members' PII. Plaintiff and Class Members have an interest in ensuring that their PII is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

178.   Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

179.   As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

180.   A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

1

### **EIGHTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

2

3      181.   Plaintiff incorporates by reference all other paragraphs as if fully set

4   forth herein.

5      182.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this

6   Court is authorized to enter a judgment declaring the rights and legal relations of

7   the parties and to grant further necessary relief. The Court has broad authority to

8   restrain acts, such as those alleged herein, which are tortious and unlawful.

9      183.   In the fallout of the Data Breach, an actual controversy has arisen about

10  Defendant's various duties to use reasonable data security. On information and

11  belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate

12  and unreasonable. And Plaintiff and Class Members continue to suffer injury from

13  the ongoing threat of fraud and identity theft.

14     184.   Given its authority under the Declaratory Judgment Act, this Court

15  should enter a judgment declaring, among other things, the following:

16          a.   Defendant owed—and continues to owe—a legal duty to use

17               reasonable data security to secure the data entrusted to it;

18          b.   Defendant has a duty to notify impacted individuals of the Data

19               Breach under the common law and Section 5 of the FTC Act;

20          c.   Defendant breached, and continues to breach, its duties by

21               failing to use reasonable measures to the data entrusted to it; and

22          d.   Defendant breaches of its duties caused—and continues to

23               cause—injuries to Plaintiff and Class Members.

24

CLASS ACTION COMPLAINT - 42

185. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

186. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

187. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class Members' injuries.

188. If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

189. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class Members, and the public at large.

**PRAYER FOR RELIEF**

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining Defendant from further unfair and/or deceptive practices;

E.    Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.    Awarding prejudgment and post-judgment interest, as provided by law;

I.    Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.    Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.


Dated: October 15, 2024        Respectfully submitted,

By: */s/ Andrew G. Gunem*

Andrew G. Gunem, No. 354042
Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
agunem@straussborrelli.com
sam@straussborrelli.com
raina@straussborrelli.com

*Pro hac vice forthcoming*
*Attorneys for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT - 45