Andrew G. Gunem (SBN 354042)
agunem@straussborrelli.com
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorneys for Plaintiff Adnan Ansar*
*and the Proposed Settlement Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADNAN ANSAR**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**THE GILL CORPORATION**,<br><br>Defendant. | Case No. 2:24-cv-08875-MEMF-PD<br><br>Honorable Maame Ewusi-Mensah Frimpong<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**<br><br>Date:        October 2, 2025<br>Time:        10:00 a.m. PT<br>Courtroom:   Courtroom 8B<br><br>Complaint Filed: October 15, 2024 |

# TABLE OF CONTENTS

I.    INTRODUCTION..............................................................................................1

II.   BACKGROUND...............................................................................................2

A.  Litigation History.......................................................................................2

B.  The Settlement Class ..................................................................................4

C.  Settlement Benefits.....................................................................................4

D.  The Notice Plan ..........................................................................................5

E.  Attorney Fees, Costs, & Service Award.....................................................6

F.  Opt-Outs & Objections...............................................................................6

III.  LEGAL STANDARD........................................................................................7

IV.  ARGUMENT ....................................................................................................8

A.  The Settlement Class Satisfies Rule 23(a) and Rule 23(b)(3)........................9

B.  Preliminary Approval Is Appropriate Under Rule 23(e)..............................13

1.  Class Counsel Provided Adequate Representation. ...................................13

2.  The Settlement Was Negotiated at Arm's Length. ....................................14

3.  The Settlement Provides Adequate Relief. ................................................15

4.  The Settlement Treats Class Members Equitably......................................17

C.  The Settlement Is Proper Under *Briseño* and Satisfies the *Bluetooth* Factors
     17

D.  The *Hanlon* Factors Support Preliminary Approval. ....................................18

1.  The Strength of Plaintiff's Case.................................................................19

2.  The Risk, Expense, Complexity, and Duration of Further Litigation........20

-i-

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL (CASE NO. 2:24-CV-08875)

3.  The Risks of Maintaining Class Action Status. ..........................................21

4.  The Amount Offered in Settlement. ...............................................................21

5.  The Extent of Discovery and the Stage of Proceedings. ..............................22

6.  The Experience and Views of Counsel. .........................................................22

7.  The Presence of a Government Participant. ...................................................23

8.  The Reaction of Class Members to the Proposed Settlement. ...................23

E.  The Court Should Approve the Proposed Notice Plan. ..................................23

V.  CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007) ...........................................................................7

*Adoma v. Univ. of Phx., Inc.*,
    913 F. Supp. 2d 964 (E.D. Cal. 2012) ..................................................................14

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ...............................................................................................8

*Ballew v. Huuuge, Inc.*,
    No. CV 23-4324, 2025 U.S. Dist. LEXIS 12445 (C.D. Cal. Jan. 22, 2025) ........10

*Carter v. Vivendi Ticketing United States LLC*,
    No. SACV 22-01981, 2023 U.S. Dist. LEXIS 210744 (C.D. Cal. Oct. 30, 2023)9,
    16, 17, 21, 22

*Gaston v. Fabfitfun, Inc.*,
    No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695 (C.D. Cal. Dec. 9, 2021) ...21

*Gupta v. Aeries Software, Inc.*,
    No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141 (C.D. Cal. Mar. 3, 2023). 14,
    15, 16, 17, 23

*Harbour v. Cal. Health & Wellness Plan*,
    No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783 (N.D. Cal. Jan. 16, 2024)  9, 19,
    20, 21, 22, 23

*Hashemi v. Bosley, Inc.*,
    No. CV 21-946, 2022 U.S. Dist. LEXIS 210946 (C.D. Cal. Nov. 21, 2022). 9, 18,
    19, 23

*Hellyer v. Smile Brands Inc.*,
    No. 8:21-cv-01886, 2023 U.S. Dist. LEXIS 137295 (C.D. Cal. Aug. 4, 2023)....9,
    10, 11, 12, 14

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL (CASE NO. 2:24-CV-08875)

*In re 23Andme, Inc. Customer Data Sec. Breach Litig.*,
    No. 24-md-03098, 2024 U.S. Dist. LEXIS 219622 (N.D. Cal. Dec. 4, 2024) 9, 10, 11, 12, 13, 14, 17, 19, 20, 22

*In re Loandepot Data Breach Litig.*,
    No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335 (C.D. Cal. Jan. 13, 2025). 9, 10, 11, 12, 14, 22

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2009) ................................................................23

*In re Postmeds, Inc. Data Breach Litig.*,
    No. 23-cv-05710, 2024 U.S. Dist. LEXIS 215466 (N.D. Cal. Nov. 26, 2024) 8, 9, 10, 11, 12, 13, 14, 16, 18, 19, 21, 24

*La Fleur v. Med. Mgmt. Int'l*,
    No. EDCV 13-00398, 2014 U.S. Dist. LEXIS 90367 (C.D. Cal. June 25, 2014)..7

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998)................................................................22

*McKinney-Drobnis v. Oreshack*,
    16 F.4th 594 (9th Cir. 2021) ................................................................13

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950)................................................................24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................15

*Peterson v. Vivendi Ticketing US LLC,*
    No. CV 23-7498, 2024 U.S. Dist. LEXIS 155397  (C.D. Cal. June 20, 2024)  7, 9, 10, 11, 12, 13, 14, 19, 21, 22

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ................................................................10

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)................................................................23

-iv-

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994)..................................................................24

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) .......................................................8, 9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)............................................................7, 18

*Uschold v. NSMG Shared Servs., LLC*,
   333 F.R.D. 157 (N.D. Cal. 2019)............................................................8

*Wright v. Linkus Enters., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) ............................................................8

**Other Authorities**

*Manual for Complex Litigation.*,
   § 21.632 (4th ed. 2013) ..........................................................................8

**Rules**

Federal Rules of Civil Procedure, Rule 12 ..............................................3

# I.    INTRODUCTION

Plaintiff Adnan Ansar ("Plaintiff") respectfully moves the Court to grant preliminary approval of the class action settlement ("Settlement") with Defendant The Gill Corporation ("Defendant") (together the "Parties"). The terms of the Settlement are set forth in the settlement agreement ("Settlement Agreement" or "S.A.") which is attached as **Exhibit 1**.[1]

This case arises out of a data breach (the "Data Breach") that impacted Defendant on or around June 23, 2024. Plaintiff alleges that the Data Breach impacted the personal information ("Personal Information") of Defendant's current and former employees (the "Settlement Class" or "Settlement Class Members"). In total, there are approximately 3,232 individuals in the Settlement Class.

The Settlement provides substantial relief to the Settlement Class—whereby Defendant will establish a non-reversionary common fund of $300,000.00 (the "Settlement Fund"). Each Settlement Class Member may claim up to $5,000.00 for documented losses or a pro rata Cash Fund Payment. In addition, all Settlement Class Members are eligible to claim two years of three-bureau credit monitoring.

Simply put, the Settlement provides the exact relief sought by the lawsuit—and satisfies the requirements for preliminary approval. Thus, Plaintiff respectfully requests that the Court enter an Order: (1) granting preliminary approval of the Settlement; (2) preliminarily certifying the Settlement Class for settlement purposes; (3) appointing Adnan Ansar as Class Representative; (4) appointing Strauss Borrelli

---

[1] Capitalized terms have the same meaning as in the Settlement Agreement.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

PLLC as Class Counsel; (5) appointing Atticus Administration, LLC as Settlement Administrator; (6) approving the proposed Notice Plan; (7) approving the form and content of the Summary Notice (Exhibit F), Long Form Notice (Exhibit D), and Claim Form (Exhibit A); (8) approving the proposed Opt-Out and Objections procedures; and (9) scheduling a Final Approval Hearing—wherein the Court will consider final approval of the Settlement, final certification of the Settlement Class for settlement purposes, and any Motion for Attorney Fees, Costs, and Service Award.

## II.    BACKGROUND

### A.    Litigation History

Defendant manufactures and sells composite products with a focus on the aerospace and transportation industries. Doc. 1 ("Compl."), ¶13. As part of its business, Defendant collects and maintains the Personal Information of its current and former employes (i.e., the Settlement Class). *Id*. ¶14. On or around June 23, 2024, Defendant was impacted by the Data Breach—which allegedly compromised the following types of Personal Information: names, social security numbers, driver's license numbers, W-2 forms, and/or bank account numbers. *Id*. ¶¶19–22. Plaintiff alleged that the cybercriminal group "Hunters International" took credit for the Data Breach and leaked the stolen Personal Information. *Id*. ¶¶32–39.

Plaintiff is a former employee of Defendant. *Id*. ¶40. On October 15, 2024, Plaintiff filed his Class Action Complaint  in this Court on behalf of himself and the Settlement Class—alleging claims for (i) negligence; (ii) negligence *per se*; (iii)

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

breach of implied contract; (iv) breach of implied covenant of good faith and fair dealing; (v) unjust enrichment; (vi) violations of California's Unfair Competition Law; (vii) violations of the California Consumer Privacy Act; and (viii) declaratory judgment. *Id*. ¶¶92–189.

On December 11, 2024, Defendant filed its Partial Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). *See* Doc. 14. Recognizing the benefits of timely resolution, the Parties began discussing the possibility of a class-wide settlement. *See* Declaration of Andrew G. Gunem ("Gunem Decl."), ¶3. After numerous meet-and-confer meetings, the Parties agreed to schedule formal mediation. *Id*. ¶4. Thus, on January 16, 2025, the Parties filed a Stipulation to Stay Proceedings Pending Mediation. *See* Doc. 18. And on February 6, 2025, the Court stayed all proceedings. *See* Doc. 21.

On May 14, 2025, the Parties engaged in formal mediation with Jill R. Sperber, Esq. of Sperber Dispute Resolution. Gunem Decl. ¶5. Prior to mediation, the Parties exchanged informal discovery—which enabled the Parties to better evaluate the strengths and weaknesses of the underlying claims and defenses. *Id*. ¶6. Additionally, each Party provided the mediator with detailed mediation statements that explained their respective positions. *Id*. ¶7.

During the mediation, the Parties engaged in extensive arm's-length negotiations. *Id*. ¶8. Notably, the Parties agreed to not negotiate attorney fees or the service award until the core terms of a settlement were finalized (as to avoid any conflicts). *Id*. ¶9. Under the guidance of the mediator, the Parties eventually reached

-3-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

an agreement on the core terms of the Settlement. *Id*. ¶10. Over the following months, the Parties continued to negotiate the finer terms of the Settlement—and on July 30, 2025, the Settlement Agreement was finalized and executed. *Id*. ¶11.

### B.    The Settlement Class

The Settlement Class is defined as "all individuals residing in the United States whose Personal Information was compromised in the Data Breach discovered by The Gill Corporation in June 2024, including all those individuals who received notice of the breach." S.A. (recitals). In total, there are approximately 3,232 Settlement Class Members. *Id*.

### C.    Settlement Benefits

The Settlement provides timely and tailored relief to the Settlement Class—including the establishment of the Settlement Fund (i.e., a non-reversionary common fund of $300,000.00). *Id*. ¶2(a). The Settlement Fund will be used to pay for attorney fees and costs, the service award, administrative expenses, and the types of relief described below. *Id*. ¶2(p).

***Documented Loss Payments***. The Settlement will pay up to $5,000.00 per Settlement Class Member for documented losses attributable to the Data Breach (e.g., identity theft, fraud, out-of-pocket costs). *Id*. ¶2(d)(i); Gunem Decl. ¶12. To receive a payment, Settlement Class Members must provide reasonable documentation of their losses. *Id*. ¶2(d)(i). If a Settlement Class Member fails to provide reasonable documentation, then they will automatically receive a Cash Fund Payment (as described *infra*). *Id*.

-4-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

***Cash Fund Payments***. The Settlement will pay a Cash Fund Payment to all Settlement Class Members that submit a claim. *Id*. ¶2(d)(ii). The Cash Fund Payment is an alternative to the Documented Loss Payment. *Id.* The amount of the Cash Fund Payment will be calculated *pro rata* from the Settlement Fund—so that the Cash Fund Payments will "exhaust the Settlement Fund." *Id*. ¶2(d)(ii), (k). The Parties estimate that the amount of the Cash Fund Payment will exceed $50.00 per claim. Gunem Decl. ¶13; *see also* S.A. ¶2(d)(ii).

***Credit Monitoring and Insurance Services***. The Settlement will pay for each participating Settlement Class Member to receive two years of Credit Monitoring and Insurance Services—which includes a minimum of three credit bureau monitoring services and $1 million in identity theft insurance. S.A. ¶2(d)(iii).

Settlement Class Members can claim either the Documented Loss Payments or the Cash Fund Payment. *Id*. ¶2(d)(ii). However, all Settlement Class Members can claim Credit Monitoring and Insurance Services. *Id*. ¶2(d)(iii).

## D.    The Notice Plan

The Parties recommend that the Court appoint Atticus Administration, LLC as the Settlement Administrator. S.A. (recitals). Atticus is a well-regarded Settlement Administrator and has substantial experience in administering complex data breach settlements. Gunem Decl. ¶14. Under the Settlement Agreement, Defendant will provide Atticus with a list (the "Settlement Class List") of the names, mailing addresses, telephone numbers, and email addresses of the Settlement Class

-5-

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Members. *Id*. ¶5(c). Thereafter, pursuant to the Notice Plan, Atticus will provide

2    notice to the Settlement Class via direct mail. *Id*. ¶5(a–f).

3          Additionally, Atticus will establish a settlement website (the "Settlement

4    Website") to provide supplementary notice and easy access to all relevant

5    documents—including the Claim Form, the Long Form Notice, the Settlement

6    Agreement, the Complaint, and any Preliminary Approval Order. *Id*. ¶5(f). The

7    Settlement Website will provide the date, time, and place of the Final Approval

8    Hearing. *Id*. And the Settlement Website will also provide a toll-free telephone

9    number and mailing address—so that Settlement Class Members can contact Atticus

10   directly with any questions or concerns. *Id*.

11         Simply put, the proposed Notice Plan satisfies the requirements of due

12   process, the applicable rules, and aligns with the notice plans in analogous data

13   breach settlements. Gunem Decl. ¶15.

14         **E.    Attorney Fees, Costs, & Service Award**

15         Pursuant to the Settlement Agreement, Class Counsel will move the Court for

16   an award of Attorney Fees and Costs of up to one-third of the Settlement Fund. S.A.

17   ¶8(a). And Class Counsel will request a Service Award of $5,000 for Plaintiff in

18   recognition of his contributions and dedication to the Settlement Class. *Id*. ¶7(a); *see*

19   *also* Gunem Decl. ¶16.

20         **F.    Opt-Outs & Objections**

21         Settlement Class Members can "opt-out" (a.k.a. "exclude themselves") from

22   the Settlement by submitting a "Request for Exclusion" to the Settlement

23

24

-6-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Administrator. S.A. ¶5(g). To be valid, opt-outs must be in writing and signed;

2    identify the case name, identify the Class Member and their lawyer (if any); and

3    contain a statement indicating their request to be excluded. *Id*. Additionally, Class

4    Members can "object" to the Settlement by submitting written objections to the

5    Court. *Id*. ¶5(h). To be valid, objections must be filed or postmarked on or before

6    the "Objection Deadline" (which the Parties recommend to be sixty (60) days after

7    the Notice Date). *Id*.

8    **III.    LEGAL STANDARD**

9        The settlement of a class action requires court approval—which is appropriate

10   when the settlement class satisfies Federal Rule of Civil Procedure 23(a) and one of

11   the Rule 23(b) prongs. *La Fleur v. Med. Mgmt. Int'l*, No. EDCV 13-00398, 2014

12   U.S. Dist. LEXIS 90367, at *7 (C.D. Cal. June 25, 2014). Furthermore, Rule 23(e)

13   "requires the Court to approve any settlement of class claims and requires reasonable

14   direct notice 'to all class members who would be bound by a proposed settlement,

15   voluntary dismissal, or compromise.'" *Acosta v. Trans Union, LLC*, 243 F.R.D. 377,

16   386 (C.D. Cal. 2007) (quoting Fed. R. Civ. P. 23(e)). To do so, the court must

17   evaluate "whether a proposed settlement is fundamentally fair, adequate, and

18   reasonable." *Id*. (quoting *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003)).

19       "Approval of a class action settlement requires a two-step process—a

20   preliminary approval followed by a later final approval." *Peterson v. Vivendi*

21   *Ticketing US LLC*, No. CV 23-7498, 2024 U.S. Dist. LEXIS 155397, at *9 (C.D.

22   Cal. June 20, 2024) (quoting *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D.

23

24

-7-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Cal. 2016)). At the preliminary approval stage, the court need only "evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Id*. (quoting *Wright v. Linkus Enters., Inc*., 259 F.R.D. 468, 472 (E.D. Cal. 2009)). Indeed, "[a]t the preliminary approval stage, the settlement need only be potentially fair." *In re Postmeds, Inc. Data Breach Litig*., No. 23-cv-05710, 2024 U.S. Dist. LEXIS 215466, at *18 (N.D. Cal. Nov. 26, 2024) (quoting *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019)).

Before granting preliminary approval, the Court should first determine if certification is appropriate for the proposed Settlement Class. *See Manual for Complex Litigation.*, § 21.632 (4th ed. 2013). Certification is appropriate if the proposed class, representatives, and counsel satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy; and the two requirements of Rule 23(b)(3): predominance and superiority. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613, 615–16 (1997). When considering a request for settlement-only class certification, the court need not consider trial manageability. *Id*. at 620.

## IV.  ARGUMENT

As explained below, the Settlement satisfies the standard for preliminary approval—i.e., the Settlement satisfies Rules 23(a), 23(b)(3), 23(e), satisfies the Ninth Circuit's *Bluetooth* factors, and is supported by the Ninth Circuit's eight *Hanlon* factors. Gunem Decl. ¶17. In other words, the Settlement is procedurally and substantively fair, reasonable, and adequate. *Id*. ¶18. After all, this Settlement

-8-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

was the product of adversarial, arms-length, and non-collusive negotiations—which is significant because "[a] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *10 (C.D. Cal.) (quoting *Spann*, 314 F.R.D. at 324).

Within the Ninth Circuit, courts regularly approve analogous data breach class actions for settlement. *See, e.g., In re Loandepot Data Breach Litig.*, No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335, at *17 (C.D. Cal. Jan. 13, 2025) (granting preliminary approval of a data breach class action settlement); *In re 23Andme, Inc. Customer Data Sec. Breach Litig.*, No. 24-md-03098, 2024 U.S. Dist. LEXIS 219622, at *14 (N.D. Cal. Dec. 4, 2024) (same); *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *7 (same); *Hellyer v. Smile Brands Inc.*, No. 8:21-cv-01886, 2023 U.S. Dist. LEXIS 137295, at *7 (C.D. Cal. Aug. 4, 2023) (same); *Harbour v. Cal. Health & Wellness Plan*, No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783, at *2 (N.D. Cal. Jan. 16, 2024) (granting final approval a data breach class action settlement); *Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981, 2023 U.S. Dist. LEXIS 210744, at *1 (C.D. Cal. Oct. 30, 2023) (same); *Hashemi v. Bosley, Inc.*, No. CV 21-946, 2022 U.S. Dist. LEXIS 210946, at *2 (C.D. Cal. Nov. 21, 2022) (same).

### A.    The Settlement Class Satisfies Rule 23(a) and Rule 23(b)(3).

The Settlement Class satisfies Rule 23(a) which requires numerosity, commonality, typicality, and adequacy. Gunem Decl. ¶19. Additionally, the

-9-

Settlement Class satisfies Rule 23(b)(3) which requires predominance and superiority. *Id.* ¶20.

**Numerosity** is satisfied when "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Ballew v. Huuuge, Inc*., No. CV 23-4324, 2025 U.S. Dist. LEXIS 12445, at *19 (C.D. Cal. Jan. 22, 2025) (quoting *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). Here, numerosity is satisfied because there are 3,232 people in the Settlement Class. S.A. (recitals).

**Commonality** is satisfied when "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Here, there are many common questions of law or fact—including "if Defendant failed to implement and maintain reasonable security procedures" and "if the Data Breach caused Plaintiff and the Class injuries[.]" Compl. ¶90. These questions establish commonality. *See, e.g., 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 (N.D. Cal.) (finding that "[c]ommon questions exist because the [class members] were subject to the same data breach; plus, there are common questions related to the breach such as whether [defendant] could have had better security policies to protect [class member] information"); *Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding commonality satisfied in a data breach class action); *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *11–12 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *19 (same); *Hellyer*, 2023 U.S. Dist. LEXIS 137295, at *7 (same).

---

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    ***Typicality*** is satisfied when "the claims or defenses of the representative

2    parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3).

3    Here, typicality is satisfied because the claims of Plaintiff and the Settlement Class

4    all arise from the same Data Breach that impacted Defendant on June 23, 2024.

5    Gunem Decl. ¶21. These similarities establish typicality. *Loandepot*, 2025 U.S.

6    Dist. LEXIS 6335, at *7 (finding typicality satisfied in a data breach class action);

7    *23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 ("Plaintiffs' claims are typical of

8    the class claims because they were subject to the same data breach[.]"); *Postmeds*,

9    2024 U.S. Dist. LEXIS 215466, at *12 (same); *Peterson*, 2024 U.S. Dist. LEXIS

10    155397, at *19 (same); *Hellyer*, 2023 U.S. Dist. LEXIS 137295, at *7 (same).

11    ***Adequacy*** is satisfied when "the representative parties will fairly and

12    adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here,

13    adequacy is satisfied because Class Counsel "has significant experience in complex

14    class action litigation and is currently litigating dozens of data breach cases in courts

15    across the country." Gunem Decl. ¶22. Moreover, "Plaintiff Adnan Ansar has

16    adequately represented the Settlement Class because he spent time reviewing the

17    complaint for accuracy, meeting with Class Counsel to answer numerous questions,

18    providing information to assist in settlement negotiations, remaining available

19    throughout the litigation process, and reviewing the settlement." *Id*. ¶23. These facts

20    establish adequacy. *See, e.g., Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding

21    adequacy satisfied in a data breach class action); *23Andme*, 2024 U.S. Dist. LEXIS

22    219622, at *47 (finding adequacy satisfied because "there are no apparent

23

24

-11-

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

conflicts"); *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *13–14 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *20 (same); *Hellyer*, 2023 U.S. Dist. LEXIS 137295, at *7 (same).

*__Predominance__* is satisfied when "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). Here, predominance is satisfied because "common questions—including if Defendant failed to implement and maintain reasonable security procedures and if the Data Breach caused Plaintiff and the Class injuries— predominate over any individualized questions." Gunem Decl. ¶24. These questions establish predominance. *See, e.g., Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding common issues predominate in a data breach class action); *23Andme*, 2024 U.S. Dist. LEXIS 219622, at *48 (N.D. Cal.) ("Common questions predominate over individual ones: the class claims, for instance, revolve around the data breach to which all class members were subject as well as [defendant's] security policies and response[.]"); *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *14–15 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *21 (same).

*__Superiority__* is satisfied when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, superiority is satisfied because "individualized litigation by 3,232 Settlement Class Members would be impracticable and the class action avoids the risks of inconsistent adjudications." Gunem Decl. ¶25. These considerations satisfy superiority. *See, e.g., Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (C.D. Cal.)

---

-12-

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(finding superiority satisfied in a data breach class action); *23Andme*, 2024 U.S. Dist. LEXIS 219622, at \*50 (same); *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at \*16 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at \*23 (same).

## B.    Preliminary Approval Is Appropriate Under Rule 23(e).

Under Rule 23(e), the court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." *23Andme*, 2024 U.S. Dist. LEXIS 219622, at \*50 (quoting Fed. R. Civ. P. 23(e)). Recently, "Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Id*. (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)).

The factors are whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id*. (quoting Fed. R. Civ. P. 23(e)(2)).

### 1.    Class Counsel Provided Adequate Representation.

Rule 23(e)(2)(A) supports preliminary approval because Class Counsel and Plaintiff provided adequate representation—as evidenced by the settlement which

-13-

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

provides timely and tailored relief to Plaintiff and Class Members. *Gunem Decl.* ¶26. Moreover, as detailed above, Class Counsel has substantial experience in complex litigation and data breach class actions. *Id*. ¶22. Thus, this factor supports approval. *See, e.g., Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding that experienced class counsel provided adequate representation in negotiating settlement); *23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 (same); *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *13–14 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *20 (same); *Hellyer*, 2023 U.S. Dist. LEXIS 137295, at *7 (same); *see also Gupta v. Aeries Software, Inc*., No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141, at *12 (C.D. Cal. Mar. 3, 2023) (finding this factor weighed toward approval when counsel "had a sound basis for measuring the terms of the settlement"). Thus, this factor supports approval.

### 2.    The Settlement Was Negotiated at Arm's Length.

Rule 23(e)(2)(B) supports preliminary approval because the Settlement was negotiated at arm's length. *Gunem Decl.* ¶27. After all, the Settlement was achieved through formal mediation and under the guidance of Jill R. Sperber, Esq. of Sperber Dispute Resolution. *Id*. ¶28. Even after the mediation session, the Parties continued to engage in arm's length negotiations for several months (i.e., as the Parties negotiated the finer terms of the Settlement). *Id*. ¶29.

This context is significant because settlements are presumed fair if they "follow sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc*., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural*

-14-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   *Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004)); *see*

2   *also Gupta*, 2023 U.S. Dist. LEXIS 36141, at *11 (C.D. Cal.) (holding that this

3   factor supported approval when the "settlement was reached as a result of intensive,

4   arm's-length negotiations"). Thus, this factor supports approval.

5                    **3.     The Settlement Provides Adequate Relief.**

6          Rule 23(e)(2)(C) supports preliminary approval because the relief provided

7   by the Settlement is adequate—and aligns with those in analogous data breach class

8   action settlements. Gunem Decl. ¶30 As explained above, this factor includes four

9   separate subfactors for the court to "tak[e] into account." *See* Rule 23(e)(2)(C). Here,

10  three of these subfactors support preliminary approval (and one is neutral).

11         ***First***, Rule 23(e)(2)(C)(i) supports preliminary approval because trial and/or

12  appeal would be costly, risky, and would delay relief to Class Members. Gunem

13  Decl. ¶31. For example, in *Gupta*, the court held that this factor supported approval

14  because "even putting aside defendant's defenses, and assuming class certification

15  were granted and upheld on appeal, defeating summary judgment, winning the case

16  at trial, and then sustaining the final judgment on appeal would be extremely

17  difficult." 2023 U.S. Dist. LEXIS 36141, at *13. Therein, the court reasoned that

18  "it is significant that class members will receive a monetary recovery 'by way of

19  the compromise to the mere possibility of relief in the future, after protracted and

20  expensive litigation.'" *Id*. (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

21  *Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004)). Likewise, this factor supports approval

22

23

24

-15-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

because the Settlement guarantees relief—as opposed to the mere possibility of relief in the future. Gunem Decl. ¶32.

**Second**, Rule 23(e)(2)(C)(ii) supports preliminary approval because the Settlement provides effective relief that is tailored to the specific injuries of Class Members. Gunem Decl. ¶33. For example, Settlement Class Members who suffered identity theft or fraud can receive a "Documented Loss Payment" to cover their losses. S.A. ¶2(d)(i). Alternatively, other Settlement Class Members—who did not suffer any documented losses—can still claim Credit Monitoring and Insurance Services and the Cash Fund Payment. *Id.* ¶2(d)(ii–iii). This structure aligns with other data breach settlements. Gunem Decl. ¶34; *see also Gupta*, 2023 U.S. Dist. LEXIS 36141, at *14 (holding that "this factor weighs in favor of approval" when "class members were required to submit claim forms to obtain monetary relief"); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *18–19 (C.D. Cal.) (same). Thus, this factor supports approval.

**Third**, Rule 23(e)(2)(C)(iii) supports preliminary approval because the proposed award of attorney fees is reasonable (i.e., Class Counsel will request an award "of up to one-third of the Settlement Fund, and, separately, reasonably incurred litigation expenses and costs"). S.A. ¶8(a). Such a request is reasonable and supports approval. *See, e.g., Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *20 (granting preliminary approval when counsel requested 33% because "even if the Court were to award this amount, the majority of the settlement fund will remain

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

for class members") (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)).

**Fourth**, Rule 23(e)(2)(C)(iv) is neutral toward preliminary approval because there are no "agreements required to be identified under Rule 23(e)(3)." *See, e.g., Gupta*, 2023 U.S. Dist. LEXIS 36141, at *16; *Carter*, 2023 U.S. Dist. LEXIS 210744, at *27; Gunem Decl. ¶35.

### 4. The Settlement Treats Class Members Equitably.

Rule 23(e)(2)(D)  supports preliminary approval because the Settlement treats Class Members equitably (i.e., the Settlement will allocate relief based on the specific harms suffered). S.A. ¶2(d)(i–iii). Thus, this factor also supports approval. *See, e.g., 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *68 (finding that a settlement provided equitable treatment when monetary relief was allocated according to the injuries suffered); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *16–17 (finding that "this factor also weighs in favor of final approval" when the settlement allocated relief "based on the actual harm claimed"); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *34 (holding that "the Settlement treats class members equitably" when "[c]lass members may receive differing payouts under the Settlement depending on what documentation they have of their ordinary and extraordinary costs").

### C. The Settlement Is Proper Under *Briseño* and Satisfies the *Bluetooth* Factors

In the Ninth Circuit, class action settlements are often reviewed for the "three red flags" delineated by *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021).

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

These "three red flags" are also called the *"Bluetooth"* factors. *Id*. The three factors are: "(i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if any of the gross settlement amount reverts to the defendant; and (iii) if there is a 'clear sailing arrangement.'" *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *17.

The Settlement is proper under *Briseño* because none of the "red flags" are present here. Gunem. Decl. ¶36. ***First***, the limit on attorney fees is reasonable and within the range accepted by courts. S.A. ¶8(a) ("Class Counsel may file a motion seeking an award of attorneys' fees of up to one-third of the Settlement Fund[.]"); *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *20. ***Second***, the Settlement Fund is non-reversionary. S.A. ¶2(o)("[N]o portion of the Settlement Fund shall be returned to TGC and/or its insurers."). ***Third***, the Settlement does not contain a "clear sailing agreement"—in fact, "[t]he Settlement is *not conditioned* upon the Court's approval of an award of Class Counsel's Fee Award and Costs or Service Awards." S.A. ¶8(a–c) (emphasis added). Thus, the *Briseño* analysis and the *Bluetooth* factors support preliminary approval.

### D.    The *Hanlon* Factors Support Preliminary Approval.

At the preliminary approval stage, courts in the Ninth Circuit often consider the eight factors provided by *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).[2]  Specifically, "[i]n determining whether a settlement is fair, reasonable,

---

[2] The *Hanlon* factors are occasionally called the "*Staton* factors" or the "*Churchill* factors." *See Briseño*, 998 F.3d at 1023 (9th Cir. 2021) (discussing the

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

and adequate, courts must balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement." *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *6 (quoting *Hanlon*, 150 F.3d at 1026). As detailed *infra*, the *Hanlon* factors support approval because two factors are inapplicable and the other six weigh toward approval.

### 1.    The Strength of Plaintiff's Case.

In the data breach context, evaluating the strength of a case is difficult because "there have been no data breach cases tried to verdict, and only a handful of cases have achieved class certification." *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *23. Indeed, in *Postmeds*, the court approved a $7.5 million common fund settlement—even when the estimated full recovery was approximately $50 million. *Id.* at *24. Similarly, in *23Andme*, the court approved a $30 million common fund settlement when the potential recovery was "almost $50 billion in damages . . . if the class were to completely prevail at trial[.]" 2024 U.S. Dist. LEXIS 219622, at *54.

Likewise, the strength of Plaintiff's case is uncertain. Gunem Decl. ¶37; *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *14 (noting that "if litigation were to

"*Hanlon/Staton* factors"); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *12 (N.D. Cal.) (discussing the "*Churchill* factors").

-19-

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  proceed, there is a fair possibility that Plaintiffs and/or the Settlement Class do not

2  prevail"). After all, [w]ithout a compromise, there [is] little guarantee of any benefit

3  to the Settlement Class without a substantial amount of further litigation." *Harbour*,

4  2024 U.S. Dist. LEXIS 7783, at *13. As such, "[t]his factor weighs strongly in favor

5  of the settlement." *Id*.

6         **2.**       **The Risk, Expense, Complexity, and Duration of Further**

7             **Litigation.**

8       In data breach cases, protracted litigation poses substantial risks—especially

9  in terms of establishing liability and damages. *23Andme*, 2024 U.S. Dist. LEXIS

10 219622, at *55 (explaining that "on liability for the negligence-based claims,

11 [defendant] could argue contributory negligence if a [class member] recycled login

12 credentials or failed to use a unique password" and that "if the class asserts that

13 [class members] suffered losses as a result of the data breach, quantifying those

14 losses—which could be both economic and noneconomic—could be difficult" and

15 that "variation in individual injuries suffered and potential damages claimable,

16 while not necessarily preclusive of certification under Rule 23(b)(3) as noted above,

17 poses challenges"); *see also Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13 (noting

18 that "this factor favors the settlement" because the "data breach injury asserted is

19 legally unproven, technically complex, and potentially of little value").

20      Additionally, class litigation poses substantial risks of "denial or reversal of

21 class certification . . . losing on summary judgment or at a jury trial . . . [or]

22 revers[al] on appeal" which would "effectively extinguish any hope of recovery by

23

24                      -20-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

the Settlement Class." *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *24; *see also*

*Carter*, 2023 U.S. Dist. LEXIS 210744, at *16 ("Even if Plaintiffs could secure a

better result than the Settlement represents at trial, any result obtained then would

take significantly longer and there is a risk that Plaintiffs could have received much

less, or nothing at all."). These risks are likewise present here—and this *Hanlon*

factor supports approval. Gunem Decl. ¶38.

### 3.    The Risks of Maintaining Class Action Status.

Without this Settlement, Plaintiff would eventually face the risks of obtaining

(and then maintaining) class certification. Gunem Decl. ¶39. And "[h]istorically,

data breach cases have experienced minimal success in moving for class

certification." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *16–17 (quoting *Gaston*

*v. Fabfitfun, Inc.*, No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695, at *6 (C.D.

Cal. Dec. 9, 2021)). These risks support approval because "the notion that a district

court could decertify a class at any time is an inescapable and weighty risk that

weighs in favor of a settlement." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13; *see*

*also Peterson*, 2024 U.S. Dist. LEXIS 155397, at *14 (noting that "if the case were

to proceed through trial, Plaintiffs would encounter risks in obtaining and

maintaining certification of the class"). Thus, this *Hanlon* factor supports approval.

### 4.    The Amount Offered in Settlement.

The Settlement provides $300,000.00 for a class of 3,232 individuals—which

equates to a value of $92.82 per Class Member. S.A. ¶2(a); Gunem Decl. ¶40. This

strongly supports approval because "other courts have approved settlements in

-21-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

privacy and security cases when each class member received just a few dollars or less." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *13. Indeed, this Settlement provides more value per Class Member than analogous data breach settlements. *See, e.g., Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *4 (approving a common fund that provided $1.48 per class member); *23Andme*, 2024 U.S. Dist. LEXIS 219622, at *23 (approving a common fund that provided $4.69 per class member); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *10, 14 (approving a common fund that provided $7.14 per class member). Thus, this *Hanlon* factor supports approval.

### 5.  The Extent of Discovery and the Stage of Proceedings.

This Settlement is the product of substantial informal discovery—which enabled the Parties to better evaluate the strengths and weaknesses of their respective claims and defenses. Gunem Decl. ¶41. For example, the Parties exchanged information about the scope of the Data Breach, the types of information impacted, the existence of applicable insurance policies, and Defendant's response to the Data Breach. *Id.* ¶42. Such an investigation is significant because "[f]ormal discovery is not necessary where the parties have 'sufficient information to make an informed decision about the settlement.'" *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *11 (quoting *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Thus, this *Hanlon* factor supports approval.

### 6.  The Experience and Views of Counsel.

Here, Class Counsel has substantial experience in complex litigation and data breach class actions. Gunem Decl. ¶43. Based on this experience, Class Counsel

---

-22-
PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

believes that this Settlement is a favorable result for Plaintiff and the Class. *Id*. ¶44. This recommendation is significant because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation" and "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *15 (quoting *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 967 (9th Cir. 2009) and *In re Omnivision Techs*., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009)). Thus, this *Hanlon* factor supports approval.

### 7. The Presence of a Government Participant.

This factor is inapplicable because the Settlement does not involve any government participant. Gunem Decl. ¶45. Thus, this *Hanlon* factor does not weigh toward (or against) approval. *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *16 (C.D. Cal.) ("Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.").

### 8. The Reaction of Class Members to the Proposed Settlement.

This factor is inapplicable at this early stage (i.e., Class Members have not yet received notice or had an opportunity to voice their opinions). Gunem Decl. ¶46. Thus, this *Hanlon* factor does not weigh toward (or against) approval. *See Harbour*, 2024 U.S. Dist. LEXIS 7783, at *16 (granting final approval because of "[t]he reaction of the class was overwhelmingly positive"); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *17 (same).

### E. The Court Should Approve the Proposed Notice Plan.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The Court should approve the proposed Notice Plan which satisfies the requirements of due process and the applicable rules. Gunem Decl. ¶47. Under the federal rules, Class Members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B) . The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual notice, only that "best practicable notice" is given).

As detailed *supra*, Atticus is a well-regarded Settlement Administrator and has substantial experience in administering complex data breach settlements. Gunem Decl. ¶14. Pursuant to the Notice Plan, Atticus will provide notice to the Settlement Class via direct mail. *Id*. ¶5(a–f). Additionally, Atticus will establish the Settlement Website to provide supplementary notice and easy access to all relevant documents—including the Claim Form, the Long Form Notice, the Settlement Agreement, the Complaint, and any Preliminary Approval Order. *Id*. ¶5(f). Atticus will also establish a toll-free telephone number and mailing address—so that Settlement Class Members can contact Atticus directly with any questions or concerns. *Id*. Thus, the proposed Notice Plan satisfies due process. *Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *26 (approving similar notice plan).

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary approval, preliminarily certify the Settlement Class for purposes of settlement, and enter the proposed preliminary approval order.


DATE: August 22, 2025                    Respectfully submitted,


By: */s/ Andrew G. Gunem*
    Andrew G. Gunem (SBN 354042)
    agunem@straussborrelli.com
    **STRAUSS BORRELLI PLLC**
    One Magnificent Mile
    980 N. Michigan Ave., Suite 1610
    Chicago, IL 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109

---

-25-

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **CERTIFICATE OF COMPLIANCE**

I, Andrew G. Gunem, hereby certify that this brief contains 5,987 words, which complies with the word limit of L.R. 11-6.1.

DATED this 22nd day of August, 2025.

By:  */s/ Andrew G. Gunem*
Andrew G. Gunem

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **CERTIFICATE OF SERVICE**

I, Andrew G. Gunem, hereby certify that on August 22, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 22nd day of August, 2025.

By:  */s/ Andrew G. Gunem*
Andrew G. Gunem

PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT